George RUSSELL and Tara Russell, Appellants,

v.

AMERICAN REAL ESTATE CORPORATION,
Appellee.

No. 13–01–474–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Oct. 3, 2002.

William Britton Hall, Beaumont, for Appellant.

Grant P. Harpold, William D. McKinnie IV, Hargis & Harpold, L.L.P., Houston, for Appellee.

Before Chief Justice VALDEZ and Justices YAÑEZ and WITTIG.[1]

## OPINION

Opinion by Justice WITTIG (Assigned).

We examine the rights of a landlord and tenant at sufferance following a foreclosure. George and Tara Russell left some personal property in a house they rented.

On their return, the personalty was missing or damaged. So they sued American Real Estate Corporation (ARE). ARE, in turn, filed for and obtained summary judgment on all the Russells' claims. The house the Russells had rented went through foreclosure. The Russells had moved many of their possessions to their new house, but left some possessions in the old house to move on a later weekend. Meanwhile, ARE, the new owner's real estate agent, had the locks changed and moved most of the Russells' possessions to storage. When the Russells returned to their old house, they discovered their things missing. ARE returned a trailer-load of items to the Russells, but the Russells claimed that much of their property was missing or damaged. The Russells brought suit for trespass to realty and personalty, conversion, breach of bailment obligations, negligence, invasion of privacy, and "forcible entry." The Russells now appeal the adverse summary judgment which the trial court granted *in toto*. We affirm summary judgment on the "forcible entry" claim, and reverse and remand on the remainder of the Russells' claims.

### I.  Background

George and Tara Russell rented a house on Brandywine Street in Beaumont from Rene Sasuman. Sasuman informed the Russells that the house was going to be foreclosed on by the lender. By April 3, 1999, the Russells had disconnected the electricity, packed many of their possessions, and moved most of them to their new house. They were, however, unable to complete the move by the end of that weekend, so they left many of their household items at the Brandywine house. They locked the doors and windows, intending to return the following weekend to

1. Retired Justice Don Wittig assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

complete the move. In the middle of the week, on April 8, the Russells were notified of a death in the family and had to travel to San Antonio for the funeral.

On April 6, 1999, the foreclosure sale took place. The buyer transferred the property to Fannie Mae. On April 8, Fannie Mae requested by letter that its local property manager, ARE, visit the property and determine the occupancy status of the property. The letter instructed if the property was vacant, ARE was to re-key it. But if it was occupied, Fannie Mae instructed ARE to place a notice on the door and call the Fannie Mae representative.

That day or the next day, ARE agent, Dana Bellanger, drove to the house. Without entering the house, she saw that a garbage can was overflowing with trash, several newspapers were on the ground, and the mailbox was full of junk mail. Bellanger's secretary had checked with the electric company, which informed her that the electricity was disconnected. Based on this, Bellanger concluded that the house was unoccupied. Bellanger then called a locksmith to re-key the house. She also had her secretary post the notice on the door. Bellanger later entered the house on April 13. She saw numerous household items and made an inventory. On April 15, Bellanger had her husband load most of the property on a trailer and move it to their garage in Port Neches.

The Russells returned to the house on April 17 to find most of their remaining possessions missing or damaged. At first, they believed the house had been burglarized and called the police. The police investigated, found what had occurred, and put the Russells and Bellanger in contact. Bellanger promptly returned to the Russells what Bellanger claimed was all the property taken from the house. But on inspection, the Russells discovered that some of their property was damaged or missing. They also found that someone had removed some of their belongings from the boxes, rummaged through "items of a very private nature such as clothing, family photos, [and] personal care items" and put them in trash bags. The Russells inventoried the damaged and missing property and estimated the total value at about $19,000. The Russells demanded, without success, that ARE return or replace the damaged and missing property, or that ARE pay them the reasonable value of the property.

The Russells filed suit, pleading trespass to realty and personalty, conversion, breach of bailment obligations, negligence, invasion of privacy, and "forcible entry." After discovery, ARE moved for summary judgment on all claims. The trial court granted the motion in full. The Russells bring this appeal, asserting the trial court in erred in granting summary judgment on all the above causes of action. We examine each claim in turn.

## II. Standard of Review

ARE's summary judgment motion is argued variously under both the traditional and no-evidence standards. We treat it as a hybrid motion.

A "traditional" summary judgment is proper only when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). A trial court properly grants summary judgment in favor of a defendant if the defendant conclusively establishes all elements of an affirmative defense, or conclusively negates at least one element of the plaintiff's claim. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

In a "no-evidence" summary judgment, a party is entitled to summary judgment if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). In reviewing a no-evidence summary judgment, we apply the same legal sufficiency standard as a directed verdict. *Chapman v. King Ranch, Inc.*, 41 S.W.3d 693, 698 (Tex.App.-Corpus Christi 2001, pet. filed). A no-evidence summary judgment is proper if the respondent fails to bring forth more than a scintilla of probative evidence in support of one or more essential elements of a claim. TEX.R. CIV. P. 166a(i).

When reviewing a summary judgment under either standard, we view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

### III. Analysis

#### A. Trespass to Real Property

■ Trespass to real property occurs when a person enters another's land without consent. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 833 (Tex. App.-Dallas 2000, no pet.); *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 933–34 (Tex.App.-Corpus Christi 1981, writ ref'd n.r.e.). Every unauthorized entry is a trespass even if no damage is done. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex.1997). Trespass requires only proof of interference with the right of possession. *Cargal v. Cargal*, 750 S.W.2d 382, 385 (Tex.App.-Fort Worth 1988, no writ).

■ We first examine ARE's claim that when Fannie Mae foreclosed on the property, the Russells' lease was terminated, thus the Russells no longer had a right to possession. ARE is correct that the foreclosure terminated the existing lease that the Russells had with Sasuman by operation of law. *See B.F. Avery & Sons' Plow Co. v. Kennerly*, 12 S.W.2d 140 (Tex. Comm'n App.1929, judgm't adopted). Although the lease was terminated, the Russells became tenants at sufferance when the foreclosure occurred. *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex.App.-Houston [14th Dist.] 1994, writ denied). When an owner acquires residential property by foreclosure, the Property Code requires that the new owner may not begin eviction proceedings—much less gain possession—before giving the tenant at sufferance thirty days' notice to vacate. *See* TEX. PROP.CODE ANN. § 24.005(b) (Vernon 2000).[2] Even after notice has been given, a tenant at sufferance continues to remain in possession until the remainder of the eviction process has been completed.[3] *See id.*; *Lighthouse Church*, 889 S.W.2d at 603 (the

---

**2.** The applicable provision reads:
  If a building is purchased at a ... trustee's foreclosure sale under a lien superior to the tenant's lease and the tenant timely pays rent and is not otherwise in default under the tenant's lease after foreclosure, the purchaser must give a residential tenant of the building at least 30 days' written notice to vacate if the purchaser chooses not to continue the lease.

TEX. PROP.CODE ANN. § 24.005(b) (Vernon 2000).

**3.** After notice, and the tenant has been duly served, the question of who has immediate right to possession is tried, and, if necessary, a writ of possession is issued authorizing the constable to forcibly remove the tenant. *See generally* TEX.R. CIV. P. 742–755.

Property Code provides very specific guidelines for resolving disputes regarding possessory rights, and those guidelines should not be departed from; Texas does not recognize "self-help repossession" of real estate). Accordingly, the Russells remained in possession of the house after foreclosure and could not be removed until the eviction process was properly effected. *See id.; Cargal,* 750 S.W.2d at 385 (trespass requires only proof of interference with the right of possession of real property); *cf. Mallam v. Trans–Texas Airways,* 227 S.W.2d 344, 346 (Tex.Civ.App.-El Paso 1949, no writ) (the right of exclusive possession is one of the constituting and essential elements of tenancy).

ARE also claims that because it had Fannie Mae's approval to enter the property, its defense of consent was established as a matter of law. ARE asserts that Fannie Mae's April 8 letter to ARE authorized it to enter the house. That letter authorized ARE to "Rekey [the house]

immediately if vacant." But the letter also stated, "If occupied, place a yellow Notice to Occupant doorhanger on the property and call me [the Fannie Mae representative] immediately."[4] Because the Russells adduced summary judgment proof that they still occupied the house (and that the house was not vacant),[5] Fannie Mae's letter did not, as a matter of law, authorize ARE to enter the house or take other actions regarding the house without first conferring with Fannie Mae. To the contrary, given the Russells' proof, a jury could infer that ARE entered the house and dispossessed the Russells in violation of Fannie Mae's instructions.[6]

In the light most favorable to the Russells, the facts show that ARE's entry on the property interfered with the Russells' right to possession and that ARE did not have the Russells' or Fannie Mae's consent to enter the property. Therefore, we sustain the Russells' issue on the trespass to realty claim.

4. The "doorhanger" stated that the house had "been acquired through foreclosure proceedings," that ARE had "been requested to determine the occupancy status of the property," and "[e]viction proceedings are in progress." As noted, ARE both re-keyed the house *and* placed a doorhanger on the property. These acts were ambiguous. But when ARE left the doorhanger on the property, which stated ARE was to "determine the occupancy status," the proof provides some evidence that ARE itself believed the property was still occupied.

5. For someone to "occupy" property does not necessarily mean that they must live in it, as ARE implies. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 466 (Tex. 1998) ("occupy" means "to hold or keep for use."); *Am. Guarantee and Liab. Ins. Co. v. 1906 Co.,* 273 F.3d 605 (5th Cir.2001) ("Occupy" means "to fill up (time or space).") (quoting AMERICAN HERITAGE COLLEGIATE DICTIONARY 944 (3d ed.1993)).

Stated another way, ARE's claim is essentially that the Russells abandoned the property. Under Texas law, abandonment is generally a

fact question. *See Lopez v. State,* 797 S.W.2d 272, 273–74 (Tex.App.-Corpus Christi 1990, writ denied). Further, the facts must affirmatively show an intent to abandon. *Strauch v. Coastal States Crude Gathering Co.,* 424 S.W.2d 677, 683 (Tex.Civ.App.-Corpus Christi, 1968, writ dism'd). The term "abandon" means "[t]o give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert." *See Railroad Comm'n of Tex. v. Waste Mgmt. of Tex., Inc.,* 880 S.W.2d 835, 843 (Tex.App.-Austin 1994, no writ) (quoting BLACK'S LAW DICTIONARY 2 (6th ed.1990)).

Though the Russells were no longer residing at the house, they continued to occupy and assert possession of it by leaving some $19,000 of their belongings there, securing the house, thus clearly manifesting their intent to return. Accordingly, there at least remains a fact issue whether the Russells occupied the property.

6. This is especially so considering that Fannie Mae's instructions to ARE were presumably to keep ARE from running afoul of the applicable eviction laws.

### B. Trespass to Personal Property

Trespass to personalty is an injury to, or interference with, possession of the property, unlawfully, with or without the exercise of physical force. *Mountain States Tel. & Tel. Co. v. Vowell Constr. Co.*, 161 Tex. 432, 341 S.W.2d 148, 150 (1960); *Jamison v. Nat'l Loan Investors, L.P.*, 4 S.W.3d 465, 469 n. 2 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). Destruction of, or injury to, personal property, regardless of negligence, may be a trespass. *Mountain States*, 341 S.W.2d at 150; *Jamison*, 4 S.W.3d at 469.

Again, ARE argues it is entitled to summary judgment on trespass to personal property because it had consent from Fannie Mae to enter the property. ARE further argues, without any support in the record, that it had authority to take possession of the Russells' personal property. These arguments fail because ARE did not show as a matter of law that it obtained consent to enter the house or to take the Russells' personal property. Further, the record shows that ARE removed most of the Russells' property from the premises and that much of it was lost or damaged as a result of ARE's taking control of it. This raises a fact issue whether ARE committed trespass on the Russells' personalty. This issue is sustained.

### C. Conversion

Conversion is established by proving that: (1) plaintiff owned, had legal possession of, or was entitled to possession of the property, (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights, and (3) defendant refused plaintiff's demand for return of the property. *Huffmeyer v. Mann*, 49 S.W.3d 554, 558 (Tex.App.-Corpus Christi, 2001, no pet.).

In challenging the Russells' conversion claim, ARE essentially reiterates the same arguments rejected above that it had effective consent from Fannie Mae to take control of the Russells' property.

The Russells' summary judgment proof showed that ARE improperly entered the house and improperly assumed and exercised dominion and control over the Russells' property without their consent, to the exclusion of and inconsistent with the Russells' rights. The Russells demanded return of their property. ARE promptly delivered a portion of it, but some of the property was missing and some was damaged. The Russells then demanded return of or remuneration for the missing and damaged property but ARE did not comply. Therefore, with regard to the missing and damaged property, the trial court erred in granting summary judgment on the conversion claim.

### D. Existence of Bailment Obligation

ARE claims that no bailment existed because it did not have knowledge of or consent to the bailment. ARE argues further that neither of the parties sought to assume a bailment relationship.

Bailment relationships may be governed by principles of contract or negligence. *See Nelson v. Schanzer*, 788 S.W.2d 81, 87 (Tex.App.-Houston [14th Dist.] 1990, writ denied); *Anchor Cas. Co. v. Robertson Transport Co.*, 389 S.W.2d 135, 138 (Tex.Civ.App.-Corpus Christi 1965, writ ref'd n.r.e.). For a bailor-bailee relationship to exist, there must generally be (1) a contract, either express or implied, (2) delivery of property to the bailee, and (3) acceptance of the property by the bailee. *Schanzer*, 788 S.W.2d at 87.

A bailment may arise by implication of law, if proof of sufficient circum-

stances show the implied relationship of bailor and bailee rests upon a substantive foundation. *Schanzer*, 788 S.W.2d at 87. In an implied bailment, it is not necessary that delivery and acceptance be formal. *See Shamrock Hilton Hotel v. Caranas*, 488 S.W.2d 151, 153 (Tex.Civ.App.-Houston [14th Dist.] 1972, writ ref'd n.r.e.) (delivery need not be intended by the "quasi" or "constructive" bailor if she would have desired the person finding the article to have kept it safely for its return to her). Further, the element of acceptance of the property and of the responsibilities accompanying the relationship may be proved directly or circumstantially. *Sanroc Co. Int'l v. Roadrunner Transp. Inc.*, 596 S.W.2d 320, 322 (Tex.Civ.App.-Houston [1st Dist.] 1980, no writ). In general, knowingly taking property into possession or control is a sufficient acceptance and may suffice to establish an implied bailment. *Rust v. Shamrock Oil & Gas Corp.*, 228 S.W.2d 934, 935 (Tex.Civ.App.-Amarillo 1950, no writ).

Here, it is undisputed that ARE, through its agents, knowingly packed and removed the Russells' possessions to Bellanger's garage for safekeeping. Viewed in the light most favorable to the Russells' summary judgment proof, this raises a fact question whether a bailment arose by implication. We sustain this issue.

### E. Negligence

The common law doctrine of negligence consists of the following elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998).

The Russells asserted that by assuming control over their personal property, ARE had a duty to use reasonable care in handling it, and that ARE breached that duty when it allowed their property to become lost or damaged. ARE essentially argues it owed the Russells no duty because the Russells were not the owners of the house and that its duties only ran to its principal, Fannie Mae.

ARE's argument avoids the germane issue. Clearly, whatever duties ARE may owe to its principal do not absolve ARE of any duties it may independently owe to the Russells, as ARE seems to suggest.

The Russells' negligence claim presents nothing novel, pleading that ARE failed to use ordinary care in handling their personal property. As discussed above, the summary judgment record shows, without dispute, that ARE took it upon itself to assume care, custody and control of the Russells' possessions. This is tantamount to the bailment situation discussed above, where a duty of ordinary care normally arises. *See Allright, Inc. v. Elledge*, 515 S.W.2d 266, 268 (Tex.1974) (the bailee's standard of care is the care a reasonable and prudent person would use in protecting bailor's property); *see also Jack Boles Servs., Inc. v. Stavely*, 906 S.W.2d 185, 188 (Tex.App.-Austin 1995, writ denied); *cf. Tex. Farm Bureau Ins. Cos. v. Sears*, 54 S.W.3d 361, 367 (Tex.App.-Waco, 2001, pet. granted) (one who voluntarily undertakes an affirmative course of action for the benefit of another party has a duty of reasonable care not to injure the other party's person or property). We therefore find that ARE's assumption of care, custody and control over the Russells' personal property carried with it a commensurate duty to exercise reasonable care in handling that property. Accordingly, we sustain the issue on the Russells' negligence claim.

### F. Invasion of Privacy

A common-law right to privacy exists under Texas law. *Billings v. Atkin-*

*son,* 489 S.W.2d 858, 859 (Tex.1973); *Rodriguez v. Wal Mart Stores, Inc.,* 52 S.W.3d 814, 822 (Tex.App.-San Antonio 2001, pet. granted). The elements that must be established for an invasion of privacy claim are: (1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person. *Valenzuela v. Aquino,* 853 S.W.2d 512, 513 (Tex.1993).

ARE claims the Russells could not establish the first element of this claim because the Russells were not living in the house at the time ARE entered it. However, the Russells' privacy claim is not based on an intrusion into their residence. Rather, they alleged ARE entered a locked space that they were in rightful possession of and rummaged through their intimate personal belongings. The invasion of privacy tort is not limited to intrusions into the home but more generally covers matters involving "another's solitude, seclusion, or private affairs or concerns." *See Valenzuela,* 853 S.W.2d at 513; *see also K-Mart Corp. Store No. 7441 v. Trotti,* 677 S.W.2d 632, 637 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.) (holding that employer's breaking into employee's work locker and rifling through her purse was sufficient to support invasion of privacy claim). The summary judgment proof, viewed in the light most favorable to the Russells, raises a fact issue that ARE intentionally intruded into the Russells' solitude, seclusion, or private affairs or concerns. We therefore sustain

the issue on the Russells' invasion of privacy claim.

### G. "Forcible Entry"

Finally, we address the Russells' suit for "forcible entry" under section 24.001 of the Property Code. We find no cause of action under Texas law known as "forcible entry." [7] The code section the Russells sue under is for "forcible entry and detainer," which states: "A person commits a forcible entry and detainer if the person enters the real property of another without legal authority or by force and refuses to surrender possession on demand." TEX. PROP.CODE ANN. § 24.001(a) (Vernon 2000). Here, though the Russells raised a fact question on unlawful entry, they admitted that they did not demand ARE surrender possession, thus negating the "detainer" element.

Further, the Russells sued only for damages, which are not available in a forcible detainer action.[8] The only issue in a suit for forcible entry and detainer is the right to actual possession. *See* TEX.R. CIV. P. 746; *Cuellar v. Martinez,* 625 S.W.2d 3, 5 (Tex.Civ.App.-San Antonio 1981, no writ) ("[t]he law is well-settled that in a forcible detainer suit the court merely resolves who is entitled to possession.").

We find no basis in law for the Russells' alleged cause of action for damages for "forcible entry." Accordingly, we hold that the trial court properly granted summary judgment on this claim.[9]

7. Nor do appellants furnish any case authority for this alleged cause of action. As a practical matter, the Russells' "forcible entry" claim, under these facts, seems to be redundant of their trespass claim discussed above.

8. In limited cases, not applicable here, a landlord may sue a tenant for rent in a forcible detainer action, if such a suit is properly

joined in the justice court. *See* TEX.R. CIV. P. 738.

9. The Russells claim that they did not make demand for return of the property because there was no reason to regain possession after ARE forcibly entered the house. Thus, to do so, they claim, would have been a "useless act" and that the law does not require a useless act. *Bures v. First Nat'l Bank, Port*

### IV. Conclusion

We sustain the Russells' issues challenging summary judgment on their trespass to realty and personalty, conversion, breach of bailment obligations, negligence, and invasion of privacy claims, and overrule their issue regarding summary judgment on their forcible entry claim. The judgment of the trial court is affirmed on the forcible entry claim only and reversed and remanded on all other claims brought forth on appeal.

*Lavaca,* 806 S.W.2d 935, 938 (Tex.App.-Corpus Christi 1991, no writ). The case cited by the Russells is one for common-law conversion of personal property. Here, the statute unequivocally requires demand be made and offers no exceptions. TEX. PROP.CODE ANN. § 24.005(c), (d) (Vernon 2000).

Since possession is the only issue in a forcible entry and detainer suit, and the Russells no longer wanted or needed possession, a demand for possession would have been a useless act. This is true not because ARE would necessarily refuse to return the property, but because the Russells did not desire the remedy afforded by the statute.