In re GPR HOLDINGS, L.L.C., Debtor.

GPR Holdings, L.L.C., Plaintiff,

v.

Duke Energy Trading and Marketing, L.L.C., et al., Defendants.

In re: GPR Holdings, L.L.C., Debtor.

Bayerische Hypo–Und Vereinsbank Aktiengesellschaft, New York Branch, Plaintiff,

v.

Duke Energy Trading and Marketing, L.L.C., Defendant.

In re Aurora Natural Gas, L.L.C., Debtor.

Robert Newhouse, Trustee for Aurora Natural Gas, L.L.C., Plaintiff,

v.

Duke Energy Trading and Marketing, L.L.C., Defendant.

Bankruptcy Nos. 01–36736–SAF–11, 01–36709–SAF–7.
Adversary Nos.03–3430, 03–3406, 03–3615.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Oct. 27, 2004.

Alan L. Busch, Gerard, Singer, Levick & Busch, P.C., Addison, TX, for Robert Newhouse, Trustee.

John C. Wynne, Andrews & Kurth, LLP, Houston, TX, for Duke Energy Trading and Marketing, LLC.

Patrick J. Neligan, Jr., Neligan, Tarpley, Andrews & Foley LLP, Dallas, TX, for GPR Holdings, L.L.C.

Lewis T. LeClair, McKool Smith, Dallas, TX, for Bayerische Hypo-Und Vereinsbank Aktiengesellschaft, New York Branch.

## *MEMORANDUM OPINION AND ORDER*

STEVEN A. FELSENTHAL, Chief Judge.

Duke Energy Trading and Marketing, L.L.C. (Duke), moves the court for summary judgment dismissing the complaint of Bayerische Hypo–Und Vereinsbank Aktiengesellschaft, New York Branch (HVB), for lack of standing and lack of evidence. HVB contends that its complaint alleges its own claim for conversion and that there are genuine issues of material fact warranting trial. The court held a hearing on the motion on September 10, 2004.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Washington v. Armstrong World Indus. Inc.,* 839 F.2d 1121, 1122 (5th Cir. 1988). On a summary judgment motion the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A factual dispute bars summary judgment only when the disputed fact is determinative under governing law. *Id.* at 250, 106 S.Ct. 2505.

The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Before 2001, HVB issued letters of credit to Western Natural Gas, L.L.C., an affiliate of Golden Prairie Supply Services, L.L.C. (GPSS), Golden Prairie Resources, L.L.C. (GPR) and Aurora Natural Gas, L.L.C., the debtors. Thereafter, HVB issued letters of credit to the debtors. The letters of credit could be used to finance sales of natural gas by the debtors, primarily to Duke. HVB holds a perfected security interest in the debtors' assets. HVB's security agreements with the debtors provide that the debtors may "use its goods [the gas] in the ordinary course of business." Duke does not dispute that HVB has a perfected security interest in the gas and the resulting receivables following the sale of the gas.

The debtors bought and sold natural gas. The debtors engaged in a series of transactions for the sale of gas with Duke. Duke entered gas purchase agreements with Aurora, and GPR in June and July of 2000, and with GPSS in March and April, 2001. The agreements contained a monthly process by which the differences arising in any month between the quantity of gas shipped back and forth, and the amount of money paid, would be reconciled.

In late May 2001, Duke discovered that it had overpaid the debtors by more than $25 million in connection with gas purchases between November 2000 and April 2001. As discussed in the Memorandum Opinion and Order entered October 5, 2004, in these consolidated adversary proceedings, there is summary judgment evidence that Duke manually sent Aurora payments, but also automatically paid for the purchased gas. Duke may have twice paid for certain gas delivered. In June 2001, Duke called the overpayment to the debtors' attention. The debtors did not remedy the overpayment. There is summary judgment evidence suggesting that the debtors could not refund the overpayment. Thereafter, Duke began a series of setoffs against the price of subsequently delivered gas.

HVB alleges that once Duke discovered its mistake and learned that the debtors could not repay the overpayment, Duke, through the continued purchase and transfer of gas, credited portions of the overpayments against newly generated receivables. HVB claims a security interest in those receivables. By the time the debtors terminated the agreements with Duke, there is summary judgment evidence that the $25 million overpayment had been reduced by approximately $17 million. HVB asserts that the purchases and transfers after June 1, 2001, coupled with Duke's setoffs, had been conducted outside the ordinary course of business between Duke and the debtors. If outside the ordinary course of business, then HVB argues the setoffs violated its security agreements with the debtors. HVB contends that, in effect, by setting off the overpayment rather than paying for the gas that generated the receivables, Duke converted HVB's security interest in the receivables generated for the delivered gas.

Based on that theory, HVB brings a claim for conversion against Duke. HVB further alleges that Duke conspired with and aided and abetted fraud by the debtors against HVB. HVB bases its claims for relief against Duke on the premise that the debtors did not transfer gas to Duke with payments of resulting receivables by setoff in the ordinary course of the debtors' business.

*Standing*

The debtors have filed complaints against Duke to recover payment for the gas at issue. The debtors contend in their complaints that Duke improperly setoff the overpayment against the receivables for subsequently delivered gas. The debtors

seek to avoid the setoffs, thereby, in effect, establishing unpaid receivables, and, based thereupon, obtaining a money judgment against Duke. *See* Memorandum Opinion and Order, entered October 5, 2004, in these consolidated adversary proceedings.

Duke contends that HVB lacks standing to prosecute its claims as the claims belong to the debtors' bankruptcy estates. In essence, the debtors in their complaints and HVB in its complaint contend that Duke has failed to pay for the delivered gas. If the debtors prevail, the debtors will obtain a money judgment for the gas from Duke, and HVB will assert its secured claim against the debtors. In that scenario, there can be no conversion nor any of the other claims alleged by HVB. Yet HVB maintains that it is prosecuting its own claims against Duke.

■■■■ The bankruptcy estates include all legal and equitable interests of the debtors in property as of the commencement of the cases. 11 U.S.C. § 541(a). That includes causes of action. *In re Educators Group Health*, 25 F.3d 1281, 1283–84 (5th Cir.1994). If a cause of action belongs to the estate, then the bankruptcy trustee has exclusive standing to prosecute the claim. Whether a particular cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. *Id.* As part of the inquiry, the court looks at the nature of the injury for which relief is sought. If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. *Id.* A creditor may not bring a claim if the claim belongs to the debtor's estate or if the creditor is seeking to recover or control property of the debtor.

*See In re Schimmelpenninck,* 183 F.3d 347, 350 (5th Cir.1999); *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1149 (5th Cir.1987).

■■■■ An action to avoid the setoffs under the Texas Uniform Fraudulent Transfer Act belongs to the bankruptcy estate. *Educators Group,* 25 F.3d at 1283–84. The debtors could have challenged the setoffs pre-petition under applicable non-bankruptcy law. The nature of the claim would have been a money judgment for unpaid receivables, if the setoffs had been avoided or otherwise set aside. The money judgment would have been paid to the debtors. The debtors would have been directly harmed by Duke's failure to pay the receivables.

On the other hand, HVB would have been indirectly harmed by Duke's failure to pay the receivables. HVB would continue to hold its security interest in the receivables, as the debtor pursued collection. If the debtors could not successfully avoid or set aside the setoff under applicable non-bankruptcy law, that would merely mean that Duke acted correctly. But, if the debtors successfully avoid or set aside the setoff, then the debtors would continue to own unpaid receivables reduced to a money judgement. The debtors remain liable to HVB. HVB must look to the debtors for payment. HVB is indirectly harmed to the extent that its security interest is diminished by non-payment of the money judgment.

The HVB claims necessarily assert that the debtors have been directly harmed, since if the setoffs were not properly taken, the receivables would be outstanding and unpaid. Yet, HVB seeks direct payment from Duke. HVB in effect seeks to control property of the bankruptcy estate. A direct action by HVB would interfere with the debtors' efforts to collect property of the estate, as HVB and the debtors

would, in essence, be pursuing Duke for the same collection.

Accordingly, there is no genuine issue of material fact that HVB is pursuing claims belonging to the debtors' bankruptcy estates. The HVB complaint must be dismissed for lack of standing.

### Causes of Action

HVB alleges that Duke converted its collateral. In addition, HVB alleges that Duke conspired with the principals of the debtors to commit fraud against HVB and that Duke aided and abetted the principals of the debtors in committing the alleged fraud. In its motion for summary judgment, Duke contends that HVB cannot establish at least one of the elements for a recovery under any of the claims.

■■■■ Under Texas law, conversion is established by proving that: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner; and (3) defendant refused plaintiff's demand for the return of the property. *Russell v. Am. Real Estate Corp.*, 89 S.W.3d 204, 210 (Tex.App.—Corpus Christi, 2002, no pet.). Stated somewhat differently, conversion is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the property owner's rights." *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex.App.—Dallas, 1992, writ denied). When the defendant initially acquires possession of personalty by lawful means, conversion generally occurs upon refusal of a demand for return of the property. *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 651 (5th Cir.1991). " 'When an indebtedness can be discharged by payment of money generally, an action in conversion is inappropriate.' " *Edlund*, 842 S.W.2d at 727 (quoting

*Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 398 (Tex.App.—Dallas 1988, writ denied)). Thus, in a debtor-creditor relationship, the remedy is a money judgment for the debt, not conversion. *Eckman*, 757 S.W.2d at 398. The measure of damages for conversion is the value of the property at the time and place of conversion. *Edlund*, 842 S.W.2d at 727. Possession of legally obtained property would not be considered converted unless the use of the property departs so far from the conditions under which it was received as to amount to an assertion inconsistent with that of the owner. *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex. App.—Austin 1992, no writ).

■■■■ Furthermore, conversion involves taking of property without the owner's consent. If the owner impliedly consented to the disposition of the property, the owner may not maintain a claim for conversion. *Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1125 (5th Cir. 1988). Texas law recognizes that "in an appropriate case" a secured creditor may maintain an action for conversion if collateral has been sold without the secured creditor's consent. *See Amarillo Nat. Bank v. Komatsu Zenoah America, Inc.*, 991 F.2d 273, 275 (5th Cir.1993).

■■■■ The debtors delivered the gas to Duke. In exchange, the debtors obtained account receivables from Duke. HVB had a security interest in the gas. Upon delivery of the gas, HVB obtained a security interest in the receivables. HVB asserts that Duke converted its security interest in the receivables by applying the setoffs. HVB acknowledges, however, that its security agreements with the debtors authorized the debtors to use the gas "in the ordinary course of business." There is no genuine issue of material fact that the debtors were in the business of selling

natural gas to purchasers, such as Duke. There is no genuine issue of material fact that in the ordinary course of that business a receivable would be generated upon delivery of the gas. To the extent that HVB had a security interest in the gas, pursuant to its security agreements with the debtors, HVB consented to the transfer of the gas in exchange for a receivable. Duke obtained possession of the gas in a lawful manner.

HVB contends, however, that Duke departed from ordinary business conditions when it applied the setoff to the prior overpayments, treating the gas as thereby paid. HVB asserts that action was inconsistent with its rights in the receivables, as only actual payment in money or money's worth would be consistent with its rights. HVB therefore argues that Duke disposed of its security interest in the receivables without its consent. Duke counters that it had contractual rights to apply the setoff. Duke maintains that it applied the setoff consistent with its contracts with the debtors and, therefore, in the ordinary course of the debtors' business.

There are genuine issues of fact regarding whether the setoff had been taken in the ordinary course of the debtors business. But the issues are not material. The debtors, like HVB, contend that the setoff occurred outside their contractual relationship with Duke and necessarily beyond the ordinary course of the debtors' business. If the setoff occurred outside the debtors' ordinary course of business, the debtors will prevail in setting aside the setoff and obtaining a money judgment on the unpaid receivables. As discussed above, HVB cannot maintain a claim that interferes with the debtors' rights to pursue that money judgment. HVB would have to look to the bankruptcy estates on its proof of a secured claim. On the other hand, if Duke prevails and establishes that the setoff occurred in the ordinary course of the debtors' business, then the setoff would come within the ambit of the authorized actions under HVB's security agreements with the debtors. HVB would have consented to the use of the collateral. There could be no conversion.

Thus, if HVB established at trial that the setoff was outside the ordinary course of the debtors' business, HVB could not proceed to a judgment as the claim would belong to the bankruptcy estates. If Duke established that the setoff was within the ordinary course of the debtors' business, there could be no conversion. Either way, HVB may not obtain a judgment on the conversion claim.

■ Turning to the HVB's allegation of a conspiracy to defraud the bank, the elements of a claim of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Jackson v. Radcliffe*, 795 F.Supp. 197, 209 (S.D.Tex.1992).

■ Texas law may not recognize a claim for aiding and abetting fraud separate and apart from a conspiracy claim, *see, e.g., Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n. 7 (Tex.2001). But, assuming the claim does exist, the elements of fraud must be established. To establish fraud HVB would have to prove: (1) that Duke or the debtors or the principal of the debtors made a material misrepresentation; (2) that the person knew the representation was false or made it recklessly as a positive assertion without any knowledge of the truth; (3) that the person intended HVB to act on the representation; and (4) that HVB actually and justifiably relied on the representation. *See, Ernst & Young, L.L.P. v.*

*Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001).

■■■ The analysis of these claims mirrors the analysis of the conversion claim. HVB contends that Duke and the debtors devised a scheme to circumvent HVB's security interest in the receivables for the gas with Duke recovering the overpayment before the bankruptcy cases had been filed. HVB alleges that Duke conspired with the debtors to force as much gas out of the debtors as possible before bankruptcy. HVB further alleges that Duke threatened and coerced the principal of the debtors into an agreement to extract money to repay Duke for the overpayment. HVB also contends that Duke knew that the extracted money would be obtained by the debtors on draws from the letters of credit. These allegations notwithstanding, there can be no unlawful, overt or fraudulent act if the setoff falls within the ambit of the ordinary course of the debtors' business. Regardless of what HVB can establish at trial, if Duke prevails on its position that the setoff had been premised on its contracts with the debtors entered in the ordinary course of the debtors' business, the conspiracy, aiding and abetting and fraud allegations fail. If HVB prevails, the debtors' claim for a money judgment trumps any claim that HVB may assert. HVB cannot use these claims to circumvent the Bankruptcy Code. If the setoffs are not within the ordinary course of the debtors' business, the setoffs would be extra-contractual and would be avoided or set aside. The receivables would be due and payable. The court would thereupon enter a money judgment for the debtors. HVB would have its security interest. No claim could thereby be pursued by HVB against Duke.

Consequently, although there are genuine issues of fact concerning these claims, the issues are not material. HVB cannot obtain a money judgment against Duke on these claims.

### Order

Based on the foregoing,

**IT IS ORDERED** that the motion of Duke Energy Trading and Marketing, L.L.C., for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint of Bayerische Hypo–Und Vereinsbank Aktiengesellschaft, New York Branch, against Duke Energy Trading and Marketing, L.L.C., adversary proceeding no. 03–3406, is **DISMISSED**.