

In The

Court of Appeals

Seventh District of Texas at Amarillo

---

No. 07-24-00171-CR

---

MAGDALENA LUCERO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CR-2022E-067, Honorable Roland D. Saul, Presiding

---

February 24, 2025

OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Before us is a landlord-tenant relationship gone awry. Because the tenant failed to timely pay rent, the landlord undertook self-help (as opposed to statutory) eviction measures. They consisted of entering the abode and removing much of the tenant's personalty located therein. Her efforts resulted in her prosecution and conviction for burglarizing a habitation. The landlord, Magdalena Lucero, now appeals the conviction through two issues. Allegedly, the evidence fails to support her conviction, and the trial

court erred in admitting the testimony of a Justice of the Peace over the objection of appellant. We affirm.

### *Issue One—Sufficiency of the Evidence*

By her first issue, appellant contends the evidence was insufficient to support the conviction. She launched several fronts to her attack. The first implicates the civil or contractual nature of a landlord-tenant relationship and addressing breaches to the agreement. The relationship being contractual for which civil forms of redress are provided, breaching the contract through self-help eviction cannot give rise to prosecution for burglary, or so argues appellant. Next, she posits that the evidence of guilt is deficient since the "title-holder to the property will always ultimately have a greater right to possession than any tenant"; so, undertaking remedial measures like those practiced here only reflect an intent to recover one's own property, "not intent to commit theft." Also, mixed into the milieu is the undeveloped allegation about the property being uninhabitable. We overrule the issue.

We apply the standard of review explained in *Alfaro-Jimenez v. State*, 577 S.W.3d 240 (Tex. Crim. App. 2019). We also note that Texas has criminalized, as burglary, the act of entering a habitation without the effective consent of the owner with intent to commit a theft. TEX. PENAL CODE ANN. § 30.02(a)(1).[1] That was the charge described within the indictment at bar. That said, we turn to the issues at hand.

Regarding the allegation that the dispute was cognizable only as a civil matter, we encounter nothing in § 30.02 barring its application to conduct arising from a landlord-

---

[1] Theft occurs when a person unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(2). Furthermore, appropriation of property is unlawful if without the owner's effective consent. *Id.* at § 31.03(b)(1).

tenant dispute. Admittedly, disputes may be both of a civil and criminal nature, and care must be taken to avoid making criminal that which is actually a civil matter. *See e.g.*, *Jacobs v. State*, 230 S.W.3d 225, 232 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (involving a prosecution for theft arising from a purported breach of contract and reversing the conviction due to the absence of evidence establishing the requisite intent); *Reed v. State*, 717 S.W.2d 643, 644-45 (Tex. App.—Amarillo 1986, no pet.) (involving a theft prosecution arising from incomplete performance of a contract and reversing the conviction because no evidence established the element of intent to deprive). But, as observed in *Roberts v.* State, 278 S.W.3d 778, 789 (Tex. App.—San Antonio 2008, pet. ref'd), "[a]lthough contractual arrangements are generally considered a civil matter and breaches are typically civil matters involving damages, conduct involving contractual arrangements can result in criminal charges in certain circumstances depending on the nature of the actions taken." So, contrary to appellant's contention, a dispute being subject to redress through civil means does not, ipso facto, insulate conduct related thereto from criminal prosecution if that conduct otherwise satisfies the elements of a crime. Nor do we read the authority cited by appellant, that is, *Salas v. State*, 548 S.W.2d 52 (Tex. Crim. App. 1977), as requiring a contrary result.

The court in *Salas* dealt with renting a room in a hotel and someone other than the renter entering the room to steal the television. The question concerned the identity of the "owner" under the burglary statute. Was it the person who actually rented the room for the evening or the hotel manager? The court said both persons fell within the category. *Id.* at 53-54. More importantly, nowhere in its opinion did it intimate that disputes between

the renter and hotel owner about the latter entering the room to remove personal items of the former posed merely a civil matter.

Yet, in holding that both persons could have been named the owner, *Salas* actually negates another argument posed by appellant. She suggests that "a title owner in the context of the instant case will always have a greater right to possession than any tenant." So, in her estimation, entry by the title owner is always with consent to the "owner." This is inaccurate for several reasons.

First, one cannot forget that in *Salas*, the Court of Criminal Appeals observed that the renter also fell within the class of "owner." It may have so concluded because the renter has possession and control over the room upon renting it. And, that leads us to the second reason. Statute defines "owner" as including the person with "a greater right to possession of the property than the actor." Tex. Penal Code Ann. § 1.07(35). Upon entering a lease, a lessor relinquishes possession or occupancy of the property to the lessee. *Levesque v. Wilkens*, 57 S.W.3d 499, 504-505 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The latter gains exclusive possession of the premises as against the owner. *Id.* In other words, the owner loses the right to possess the property to which he may hold title for that right was granted the tenant. Given this, we cannot but reject appellant's notion that the title owner to leased property "will always have a greater right to possession than any tenant."[2]

---

[2] We leave for another day the question whether a lessor's entry based upon a reservation of rights in a lease agreement requires a different answer. Appellant did not argue before us that she entered the property based on some reservation within the lease agreement. Of course, we cannot but wonder whether entry per a lease provision contemplates or authorizes entry with the intent to commit a felony or theft.

4

As for the element of mens rea, appellant says "there was no evidence [she] intended to commit theft." Rather, her conduct consisted of "merely trying to recover possession of her own property, to which she had title." Yet, in supposedly wanting to recover possession of her own property, she exercised control over the personalty of her tenant by placing much of it in her (appellant's) truck and throwing some of it in a dumpster. And, as admitted to the police chief, she did so without the tenant's permission. The chief further heard her say that though she had a "contract" with the tenant, it "didn't necessarily allow for her to either enter the property or remove any property." Nor had she begun, much less completed, statutory eviction procedures, which was another matter appellant revealed to others. The latter is of import because until the completion of that process, a tenant maintains possession of the leased realty. *Russell v. Am. Real Estate Corp.*, 89 S.W.3d 204, 208-209 (Tex. App.—Corpus Christi 2002, no pet.). And, that appellant was familiar with the formal eviction procedures at the time of her entry was evinced by evidence indicating she previously utilized them. We further note the evidence of her misrepresenting to authorities that the abode had been abandoned. Indeed, appellant and her tenant texted each other a day earlier about the rent then due, and in that text exchange the tenant revealed her intent to pay it. Lying about the home being abandoned evinces a consciousness of guilt regarding her activities. *See Woods v. State,* No. 07-22-00208-CR, 2023 Tex. App. LEXIS 5696, at *3-4 (Tex. App.—Amarillo Aug. 1, 2023, no pet.) (mem. op., not designated for publication) (recognizing that lying is one of the strongest kinds of evidence of guilt).

Simply put, a person commits theft if he or she unlawfully appropriates property with intent to deprive the owner of it. TEX. PENAL CODE ANN. §§ 30.02; 31.01.

5

Appropriation occurs when one exercises control over the property, *id.* at § 31.01(4)(B), which appropriation is unlawful if done without the owner's effective consent. *Id.* at § 31.01(3). The evidence described in the immediately preceding paragraph is some from which a rational factfinder could infer, beyond reasonable doubt, that appellant entered the home with the intent to commit each element of theft and actually committed each element. She entered the abode without the tenant's consent and removed and disposed of the tenant's property without consent. Then she apparently lied to others about doing so because the tenant abandoned the house.

The final component of appellant's first issue concerns proof that the abode was a habitation. Appellant argues that "there was insufficient evidence to establish the property in question was suitable for habitation." Again, burglary requires entry of "a habitation." The legislature defined "habitation" to mean "a structure or vehicle that is adapted for the overnight accommodation of persons." TEX. PENAL CODE ANN. § 30.01(1). Evidence that appellant rented the house for residential purposes and at least one person both furnished and lived in the house is some evidence permitting a rational factfinder to reasonably infer, beyond reasonable doubt, that the structure appellant entered was adapted for overnight accommodation of persons, that is, was an actual "habitation."

### Issue Two—Admission of Evidence

Through her second issue, appellant argues that "[t]he trial court erroneously permitted a justice of the peace to testify as a legal expert and offer opinion testimony and legal conclusions about tenant-landlord and criminal matters. No gatekeeper function was exercised whatsoever." We overrule the issue.

6

Appellate courts review a trial court's rulings on the admission of evidence, including expert testimony, for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Id*. Yet, before applying that test, we have a duty to determine, sua sponte, whether the appellant preserved the complaint for review. *Darcy v. State*, 488 S.W.3d 325, 327-28 (Tex. Crim. App. 2016). We do that now.

Preserving a complaint for review obligates one to present the trial court with a timely objection or motion stating the specific grounds for the ruling desired. *Gibson v. State*, 541 S.W.3d 164, 166 (Tex. Crim. App. 2017). Furthermore, the grounds urged in support of that objection or motion must comport with or correspond to the grounds urged on appeal; in other words, an objection stating one legal theory may not be used to support a different theory on appeal. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *see also*, *Lucio v. State*, 351 S.W.3d 878, 900 (Tex. Crim. App. 2011) (stating that the appellant failed to preserve his complaint because the objection raised at trial failed to comport with the point of error asserted on appeal). Authority also requires the complainant to either object each time allegedly inadmissible evidence is offered or obtain a running objection to that evidence. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Juarez v. State*, No. 08-23-00297-CR, 2024 Tex. App. LEXIS 7020, at *11 (Tex. App.—El Paso Sept. 27, 2024, pet. ref'd) (mem. op., not designated for publication) (same). And, if a running objection is utilized, one must describe the scope of the objectionable evidence and ask for a running objection covering all the subsequent evidence fitting that description. *Lubbock Cty v. Reyna*, No. 07-19-00330-CV, 2021 Tex.

7

App. LEXIS 33, at *10 (Tex. App.—Amarillo Jan. 5, 2021, no pet.) (mem. op.). As explained by our Court of Criminal Appeals, so long as the running objection constitutes an objection stating the specific grounds for the ruling requested then the error is preserved. *Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991). Finally, a running objection must be specific and is waived if the party fails to object to similar evidence outside the scope of the running objection. *Id.*; *see Broxton v. State*, No. AP-71,488, 2005 Tex. Crim. App. Unpub. LEXIS 393, at *18-19 (Tex. Crim. App. June 29, 2005) (not designated for publication) (stating that despite requesting a running objection on the ground that the evidence was insufficient to show appellant committed the offenses, "[i]t was incumbent upon appellant to alert the trial court that the apparent basis for the insufficiency objection had changed"); *Blue v. State*, Nos. 02-17-00265-CR, 02-17-00266-CR, 02-17-00267-CR, 2018 Tex. App. LEXIS 10910, at *21-23 (Tex. App.—Fort Worth Dec. 31, 2018, pet. ref'd) (mem. op., not designated for publication) ("although a request for a running objection is generally considered timely and preserves error, the use of a running objection is limited and cannot encompass too broad a subject matter, during too broad a time, or over different witnesses").

As evinced by the record, appellant initially objected to the testimony in question and obtained a running objection from the trial court. Yet, the substance of the initial and running objection encompassed the State's failure to identify the jurist as a testifying expert. That legal theory was not urged on appeal. Rather, appellant argues that the Justice of the Peace was 1) not qualified as an expert and 2) voiced inadmissible legal opinions on civil and criminal matters. Despite those grounds being voiced to the trial court, they were not accompanied by a request for a running objection. Nor were they

8

urged until after the jurist answered multiple questions regarding eviction procedures and remedies.[3] Nor did they fall within the scope of the grounds underlying appellant's earlier request for a running objection; that is, complaining about the failure to identify an expert differs from complaining about the witness qualifying as an expert who utters inadmissible legal conclusions. More importantly, the witness continued to answer questions as an expert and voiced purportedly legal conclusions without appellant's further objecting or obtaining a running objection encompassing those specific grounds. So, these circumstances prevent us from concluding that appellant preserved for review the legal theories or points of error within issue two.

There is another reason appellant has waived our review of her complaint and that is her failure to adequately brief this issue. *See* TEX. R. APP. P. 38.1(i) (setting forth briefing requirements). First, appellant failed to cite to the purported evidence she deemed to be legal conclusions, and she did not explain why they were legal conclusions as opposed to mixed questions of law or fact or merely factually based opinions which are admissible. *See In re S.G.*, No. 07-24-00271-CV, 2025 Tex. App. LEXIS 914, at *6 (Tex. App.—Amarillo Feb. 14, 2025, no pet. h.) (mem. op.) (citing *Leon-Gomez v. State*, No. 06-18-00144-CR, 2019 Tex. App. LEXIS 1876, at *7 (Tex. App.—Texarkana Mar. 13, 2019, no pet.) (mem. op., not designated for publication) (noting the appellant's burden to identify the specific evidence deemed inadmissible)). Second, an appellant has a duty

---

[3] In short, these grounds of objection were not urged at the earliest opportunity, as required to preserve a complaint for review. *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) (stating that an objection must be asserted at the earliest opportunity); *Maden v. State*, No. 07-11-0110-CR, 2013 Tex. App. LEXIS 2619, at *5 (Tex. App.—Amarillo Mar. 13, 2013, pet. ref'd) (mem. op., not designated for publication) (same). This means that complaints based on grounds relating to the jurist's being an unqualified expert or voicing legal conclusions were untimely and, therefore waived.

to accompany the issue with substantive analysis. *See Herrera v. State*, No. 07-19-00368-CR, 2020 Tex. App. LEXIS 6093, at *5 (Tex. App.—Amarillo Aug. 3, 2020, no pet.) (mem. op., not designated for publication). While appellant expressed the gatekeeping elements for determining whether someone is qualified as an expert, she did not apply that test to the circumstances of the case. For instance, she did not explain why someone who has been a Justice of the Peace for 17 years and charged with presiding over eviction proceedings is not qualified as an expert on matters of eviction.

Having overruled all issues, we affirm the trial court's judgment.


Brian Quinn
Chief Justice


Publish.

10