Opinion issued February 10, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00636-CV

———————————

Aspenwood Apartment Corp., Appellant

V.

Coinmach,
Inc., f/k/a Solon Automated Services, Inc., Appellee



 



 

On Appeal from the 125th District Court

Harris County, Texas



Trial Court Case No. 9815016

 



 

OPINION ON REHEARING

Appellee,
Coinmach, Inc. f/k/a Solon Automated Services, Inc. (“Coinmach”), filed a
motion for rehearing of our August 19, 2010 opinion.  We grant rehearing and withdraw our August
19, 2010 opinion and judgment and issue this opinion and judgment in their
place.  The disposition of the case
remains unchanged.

Appellant, Aspenwood Apartment
Corporation (“Aspenwood”), appeals the trial court’s rendition of a take nothing
judgment against it based on Coinmach’s motions for summary judgment.  In eight issues, Aspenwood argues that the
trial court erred (1) in dismissing Aspenwood’s claims for breach of
contract; (2) in dismissing Aspenwood’s trespass and trespass to try title
claims; (3) in dismissing Aspenwood’s tortious interference claim based on
Coinmach’s status as a tenant at sufferance; (4) in holding Aspenwood’s
trespass to try title claims moot after Coinmach vacated the premises; (5) in
dismissing Aspenwood’s tortious interference claims based on the statute of
limitations; (6) in dismissing Aspenwood’s DTPA claims on the ground that
Aspenwood was not a consumer; (7) in finding that Aspenwood was not a
prevailing party on Coinmach’s counterclaims; and (8) in dismissing Aspenwood’s
Declaratory Judgment Act claim as invalid.

          We
affirm in part and reverse and remand in part.

BACKGROUND

          Coinmach
leases laundry rooms in apartment complexes in which it installs coin-operated
laundry equipment, services the equipment, and collects revenues generated from
the laundry machines.  In 1980, Coinmach,
then doing business under the name Solon Automated Services, Inc., contracted
with Garden View Apartments to provide laundry services to an apartment complex
on Pech Road in Harris County, Texas.  

The lease provided that the
apartment complex leased to Coinmach “the laundry room(s) on the premises
described above commencing on date of lease and ending ten (10) years after
laundry equipment installation is completed.” 
Coinmach was entitled to “the right of exclusive installation and
operation of the Equipment on the above described premises,” for which it
agreed to pay a certain percentage of the gross receipts to the apartment
complex owner “as the total rental due hereunder, within thirty (30) days of
the date of collection.”  The lease also
provided that Coinmach “shall own and maintain the Equipment that it installs,
without expense to” the apartment complex. 
The lease also contained the following provisions:

7. This Lease shall be
binding on the parties hereto, their heirs, executors, successors, assigns and
personal representatives.

 

8. In the event [Coinmach’s]
equipment maintenance becomes unsatisfactory and is not corrected within
fifteen (15) days after [the apartment complex] notifies [Coinmach] in writing,
by certified or registered mail, this Lease become null and void.

 

9. This Lease shall be
subordinate to any mortgage or deed of trust on the premises.

 

. . . .

 

11. [The owner] shall inform
all subsequent owners of the property of the rights of [Coinmach] under this
lease.

 

12. In the event any action
is instituted to enforce any provision of this Lease, the prevailing party
shall be entitled to reasonable attorney fees, court costs and expenses.

 

In 1989, Coinmach and the apartment complex executed
an addendum to the lease that extended the expiration date of the lease to July
12, 1999, and modified the percentage of the monies collected that would be
paid to the apartment complex as rent.

In January 1994, the apartment
complex was sold at a foreclosure sale to Curtis Mosely, the original financer
of the property, who immediately deeded the property to Properties on Pech Road
(“PPR”), a corporation owned by Mosely and run by Mosely’s business associate,
David Cragg.  In April 1994, Aspenwood
bought the apartment complex from PPR. 
At the time Aspenwood purchased the property, Coinmach was operating in only
one of the two laundry rooms at the complex. 
On April 6, 1994, Aspenwood gave Coinmach written notice to vacate the
laundry room, stating that Aspenwood believed that the foreclosure had
terminated the lease and that it was unhappy with condition of the laundry
rooms operated by Coinmach.  Coinmach,
however, believed that its lease was still valid and insisted on remaining on
the property and continuing to operate its machines.  In May 1994, Aspenwood removed Coinmach’s
equipment from the laundry rooms and began to remodel one of the laundry
rooms.  In response, Coinmach sought and
obtained a writ of re-entry from the justice court in June 1994.

          In
1996, Aspenwood filed a forcible entry and detainer action against Coinmach and
sent Coinmach another notice to vacate by certified mail.  Aspenwood eventually succeeded in its
forcible entry and detainer action in the justice court, but Coinmach appealed
the ruling to the county court at law and got it overturned by order issued on
June 26, 1998.  This cause was further
appealed to this Court, which determined that it did not have jurisdiction to consider
the action because it did not relate to property used for residential purposes
only.  See Aspenwood Apt. Corp. v. Solon Automated Servs., Inc., No.
01-98-00516-CV, 1999 WL 1063435 (Tex. App.—Houston [1st Dist.] Nov. 24, 1999,
no pet.) (not designated for publication); see
also Tex. Prop. Code Ann. §
24.007 (Vernon
2000) (providing that final judgment of county court in eviction suit may not
be appealed on issue of possession unless premises are used for residential
purposes only).

          Coinmach remained on the
property for several more years.  During
this time, Aspenwood sent further notices to vacate and complained to Coinmach
on several occasions regarding the condition of the laundry rooms, failure to
pay rent, and failure to provide an accounting for its receipts from the
laundry room.  Aspenwood maintains that
it never cashed any checks it received from Coinmach.

          On
March 30, 1998, Aspenwood initiated the instant suit.  It filed a petition in the trial court
seeking a declaratory judgment that Coinmach “has no rights to possession” and
that it “does not have a leasehold interest in the property,” and alleging
causes of action for trespass to try title, breach of contract and attorney’s
fees, various violations of the Texas Deceptive Trades Practices Act (DTPA),[1] statutory fraud in a real
estate transaction,[2]
common law fraud, and tortious interference with prospective contractual
relationships.  Coinmach counterclaimed,
asking the trial court to declare that it was entitled to possession as lessee
of the property and arguing that Aspenwood’s lawsuit was brought in bad faith
and for purposes of harassment in violation of chapters 9 and 10 of the Civil
Practice and Remedies Code and that it was entitled to recover attorney’s fees,
and alleging counterclaims for breach of contract, breach of warranty of
possession and quiet enjoyment, breach of warranty of fitness for a particular
purpose, breach of warranty of suitability, tortious interference, specific
performance, and defamation.

          While
the suit was still pending in the trial court, the 1999 termination date
designated in the lease agreement passed, and Coinmach refused to vacate the
laundry rooms, arguing that the lease had been renewed.  Aspenwood had a different laundry service
take over operation of a second laundry room that had been previously abandoned
by Coinmach.  Coinmach obtained a second
writ of reentry, forcing the competing laundry room operator to cease
operations and leave the facility.

          Subsequently,
the trial court made a ruling that Coinmach’s lease had terminated when the
property was foreclosed in 1994.[3]  The case went to trial in May 2000, and a
jury found approximately $1.5 million in damages in favor of Aspenwood.  The trial court subsequently rendered
judgment on the jury’s verdict, and Coinmach vacated the property.

          Coinmach
filed a motion for new trial, which the trial court granted.[4]  In the second trial, Aspenwood again asserted
claims for common law trespass, trespass to try title, DTPA violations,
tortious interference with a prospective contract, declaratory judgment, and
breach of contract.

On May 4, 2007, Aspenwood filed a
motion for partial summary judgment seeking to establish Coinmach’s tenancy
status.  Specifically, Aspenwood asked
the trial court to determine whether, “On April 6, 1994, when Aspenwood took
over the property, was there a holdover month-to-month tenancy with [Coinmach]
under which Aspenwood could declare a breach and sue for damages and legal
fees?”  Aspenwood argued that the
original lease was terminated by foreclosure and that, because there was no
communication between Coinmach and PPR, the post-foreclosure owner, negating a
continued relationship, a month-to-month tenancy arose between the parties that
was governed by the same material terms as the original lease.  Aspenwood’s motion was supported by evidence,
including the testimony of Coinmach employee David Siegel that Coinmach was not
advised of the foreclosure in January 1994 and that it was not advised that its
lease had been terminated by the foreclosure. 
Siegel also testified that Coinmach continued to operate the laundry
rooms and send checks to the apartment complex office, which were cashed.  Siegel was not able to testify as to who
cashed the checks.  Aspenwood also
attached copies of the original lease and of the cancelled checks, which were
endorsed by “Pech Road Investments, DBA Gardenview Apartments.”[5]

On May 7, 2007, Coinmach filed its
own motion for partial summary judgment seeking to establish that it was a
tenant at sufferance of PPR after the foreclosure terminated its original
lease.  It argued, “The undisputed
evidence shows that Mosley and PPR were totally unaware of Coinmach’s existence
and possession of the [p]remises; therefore, they could not have consented to
Coinmach remaining in possession of the [p]remises.”  Coinmach argued that because the original
lease was terminated by the January 1994 foreclosure and the undisputed
evidence demonstrated an “absence of agreement” and an “absence of consent by Mosely, PPR,
and [Aspenwood], . . . there is no genuine issue of material fact that Coinmach
was anything more than a tenant at sufferance.” 
Coinmach’s motion was accompanied by testimony of both Mosely and Cragg
that they had no knowledge of Coinmach’s existence or presence on the property,
that they had absolutely no contact or communications with Coinmach, and that
neither Mosley nor PPR ever received or cashed any checks from Coinmach.

On May 29, 2007, the trial court
signed an order ruling that the 1994 foreclosure terminated Coinmach’s lease as
a matter of law, and it ruled that Coinmach was a tenant at sufferance as a
matter of law.  The trial court also
denied Aspenwood leave to file its breach of lease claim in its amended
petition, and it ordered that “all claims by [Aspenwood] for breach of lease in
any amended pleading are struck.”

Coinmach then filed a series of
motions addressing the remainder of Aspenwood’s claims.  Coinmach filed a Rule 166 motion seeking a
ruling that a tenant at sufferance cannot be a trespasser as a matter of
law.  It also filed a traditional motion
for summary judgment on Aspenwood’s trespass to try title claim, arguing that
the claim was moot and procedurally improper, and a no-evidence motion for
summary judgment, arguing that Aspenwood could present no evidence that it was
a consumer under the DTPA.  Coinmach
filed a traditional motion for summary judgment on Aspenwood’s tortious
interference with prospective contract claim asserting that because it was a
tenant at sufferance its conduct could not have been tortious.  Finally, Coinmach filed a Rule 166 motion
seeking a ruling that Aspenwood’s declaratory judgment claims were barred as
procedurally improper.

On June 11, 2008, the trial court
signed an order granting Coinmach’s no-evidence motion for summary judgment as
to Aspenwood’s consumer status in its DTPA claims.  Also on June 11, 2008, the trial court issued
an order stating:

1) After hearing additional
argument from counsel for both parties, the Court hereby clarifies its previous
“tenant-at-sufferance” order entered on May 29, 2007, by finding that Coinmach
Corporation had a possessory interest and right in the laundry rooms at the
Aspenwood Apartments, from the date of the foreclosure in Jan., 1994, until
Coinmach vacated the property in May, 2000. 

 

. . . .

 

3)  Given [this] clarification . . ., the legal
effect of the Court’s May 29, 2007 ruling is to preclude [Aspenwood’s]
remaining causes of action as a matter of law.

 

. . . .

 

5) Pursuant to the Court’s
May 29, 2007 Order, Coinmach had a possessory interest and right in the laundry
rooms at the Aspenwood Apartments at all times relevant to this lawsuit (i.e.,
April 6, 1994 until Coinmach vacated in May, 2000), therefore Aspenwood shall
take nothing by way of its common law trespass and trespass-to-try-title
claims.  Additionally, trespass to try
title was mooted in May, 2000 because Coinmach left the property, never to
return.

 

6) Another legal effect of
this Court’s May 29, 2007 Order is that Coinmach cannot have tortiously
interfered with [Aspenwood’s] prospective contractual relations because it was
exercising its own lawful rights of possession and that there is no independent
tort which is a required predicate to such claim; further, the tortious
interference with prospective contractual relations is barred by the statute of
limitations.  Accordingly, [Aspenwood]
takes nothing by way of its tortious interference with prospective contractual
relations claim.

 

7) In addition, . . . the
Court also clarifies that Aspenwood is not entitled to any relief on its
Declaratory Judgment Act claim.

 

8) Moreover, . . . the Court
denies Aspenwood’s claim for legal fees [as the prevailing party on Coinmach’s
third amended counterclaim].

 

The trial court signed its final judgment that
Aspenwood take nothing, and this appeal followed.

ANALYSIS

A.      Summary Judgment Standard of Review

We review a trial court’s grant of summary judgment de
novo.  Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  When a party moves for both a traditional and
a no-evidence summary judgment, we first review the trial court’s summary
judgment under the no-evidence standard of Texas Rule of Civil Procedure
166a(i).  Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 600 (Tex. 2004).  If the
no-evidence summary judgment was properly granted, we do not reach arguments under
the traditional motion for summary judgment. 
Id.

To prevail on a no-evidence motion for summary judgment, the
movant must establish that there is no evidence to support an essential element
of the non-movant’s claim.  Tex. R. Civ. P. 166a(i); see Flameout
Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830,
834 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  The burden then shifts to the non-movant to
present evidence raising a genuine issue of material fact as to the elements
specified in the motion.  Mack Trucks,
Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  “The trial court must grant the motion
unless the nonmovant produces more than a scintilla of evidence raising a
genuine issue of material fact on the challenged elements.”  Flameout Design & Fabrication, 994
S.W.2d at 834.

          To prevail on a traditional summary
judgment motion, the movant has the burden of proving that it is entitled to
judgment as a matter of law and that there are no genuine issues of material
fact.  Tex.
R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995).  When, as here, the trial court’s
summary judgment order does not state the basis for the trial court’s decision,
we must uphold the order if any of the theories advanced in the motion is meritorious.  Knott,
128 S.W.3d at 216.

B.      May 29,
2007 Order Finding that Coinmach was a Tenant at Sufferance and Striking
Aspenwood’s Breach of Lease Claims

 

          In part of its first issue, Aspenwood
argues that the trial court erred in granting summary judgment on Aspenwood’s
breach of lease claims because a holdover tenant is subject to liability if it
breaches the terms of the lease under which it holds over.

          When a landlord-mortgagor is
foreclosed upon, the general rule is that a tenant’s lease is terminated.  ICM
Mortgage Corp. v. Jacob, 902 S.W.2d 527, 530 (Tex. App.—El
Paso 1994, writ denied); Twelve Oaks Tower I, Ltd. v. Premier
Allergy, Inc., 938
S.W.2d 102, 108 (Tex. App.—Houston [14th Dist.] 1996, no writ).  A tenant who continues to occupy the premises
after expiration of a lease is a holdover tenant.  Gym-N-I
Playgrounds, Inc. v. Snider, 220 S.W.3d 905, 908 (Tex. 2007).

We look at the lease itself to determine whether the terms of
the lease continue in the event of a holdover tenancy.  Bockelmann
v. Marynick, 788 S.W.2d 569, 571–72 (Tex. 1990).  Absent evidence to the
contrary, a holdover tenant is presumed to be bound by covenants that were
binding on him during the term of the lease. 
Barragan v. Munoz, 525 S.W.2d
559, 561 (Tex. Civ. App.—El Paso 1975, no writ).  Even when the lease does not contain a
holdover provision, if the tenant remains in possession and rent continues to
be accepted by the landlord, the terms of the expired lease are presumed to
continue unless there is an agreement to the contrary.  Id.
at 562; see also Carrasco v. Stewart, 224 S.W.3d 363, 368 (Tex. App.—El Paso 2006, no pet.). 


The tenant and a foreclosure-sale purchaser may also
independently enter into a new landlord-tenant relationship, but both parties
must manifest consent to enter into a new lease.  ICM
Mortgage, 902 S.W.2d at 532–33; see
also Twelve Oaks Tower, 938 S.W.2d at 109–10 (“[T]he fact that a
foreclosure sale terminates a lease does not erect a legal barrier to the
formation of an independent landlord-tenant relationship between the tenant and
the foreclosure sale purchaser.”).  Thus,
“we must look at the post-foreclosure conduct of the parties to determine
whether a new lease, with terms supplied by the previous one, was created by
implication.”  Twelve Oaks Tower, 938 S.W.3d at 110 (citing ICM Mortgage, 902 S.W.2d at 533). 
“The fact that the
parties are held to the terms of the previous lease does not alter this
conclusion,” because “[i]t is merely the origin of the new contractual
relationship that is independent of the prior lease, not the substance of the
relationship.”  Twelve Oaks Tower, 938 S.W.2d at 110.  “This allows for the reasonable inference
that because a contractual agreement is implied between the parties, it is
prudent to look at an existing instrument to which at least one party had
previously assented to establish the terms of the implied agreement.”  Id.  However, continuation in possession,
without more, does not establish an agreement to pay rent pursuant to the
lease.  ICM Mortgage, 902 S.W.2d at 532. 


          When no new lease is formed and a
tenant continues in possession of land covered by a prior lease but omitted
from a succeeding lease, that tenant is either a tenant at sufferance or a
tenant at will.  See Mount Calvary Missionary Baptist Church v. Morse St. Baptist Church,
No. 2-04-147-CV, 2005 WL 1654752, at *6 (Tex. App.—Fort Worth July 14, 2005, no
pet.) (mem. op.) (quoting 49 Tex. Jur.
3d Landlord and Tenant § 13
(2003)).

A tenant at will is one who is in lawful possession of
premises by permission of the owner or landlord for no fixed term.  ICM
Mortgage, 902 S.W.2d at 530 (citing Robb v. San Antonio St. Ry., 18 S.W. 707, 708 (1891)).  A tenant at will has no certain or sure
estate, and the lessor may put him out at any time.  Id.  “A tenant at will, in contrast to a
tenant at sufferance, possesses the property with the owner’s consent.”  Id.  

“Tenancy at sufferance is created and exists where a person
who has entered as a tenant for a term holds over after the expiration of the
term” or when a person holds over after a judgment has divested him or her of
title to real property.  Mount Calvary Missionary Baptist Church,
2005 WL 1654752, at *6 (quoting 49 Tex.
Jur. 3d Landlord and Tenant §
13 (2003)).  Usually, a tenancy at
sufferance arises when a tenant holds over past the end of his tenancy.  McLain
v. Lamb, No. 07-95-0251-CV, 1996 WL 721954, at *5 n.6 (Tex. App.—Amarillo
Dec. 16, 1996, writ denied) (not designated for publication).  “A tenant who remains in possession of the
premises after termination of the lease occupies ‘wrongfully’ and is said to
have a tenancy at sufferance.”  Bockelmann, 788 S.W.2d at 571; Carrasco, 224 S.W.3d at 368.

Tenancy at sufferance
is a lesser possessory estate than tenancy at will.  ICM
Mortgage, 902 S.W.2d at 530.  “A
tenant at sufferance is merely an occupant in naked possession of property
after his or her right to possession has ceased[,] . . . does not assert a
claim to superior title, is not in privity with the owner, and possesses no
interest capable of assignment.”  Mount Calvary Missionary Baptist Church, 2005 WL 1654752, at *7 (quoting 49 Tex. Jur. 3d Landlord and Tenant § 13 (2003)); ICM Mortgage, 902 S.W.2d at 530 (holding that tenant
at sufferance “is one who wrongfully continues in possession of property after
his right to possession has ceased and does not assert a claim to superior
title”) (citing Restatement (First) of
Property § 22 (1936)).  Tenants at sufferance constitute “a class of
possessors who are not tenants but who may be turned into tenants at the
election of the owner.”  McLain, 1996
WL 721954, at *5 (quoting 2 R. Powell & P. Rohan, Powell on Real Property § 16.06[2] (1996)).  A “tenant at sufferance falls short of being
a trespasser only by virtue of having initially been in possession
rightfully.”  Id.  He may thus be treated
by the landlord either as a trespasser or as a periodic tenant retroactively to
the beginning of the relationship.  Id.

“Under the common law holdover rule, a landlord may elect to
treat a tenant holding over as either a trespasser or as a tenant holding under
the terms of the original lease.”  Bockelmann,
788 S.W.2d at 571; Carrasco, 224
S.W.3d at 368.  Either way, tenants at sufferance are
“impliedly liable to their landlord for the ‘use and occupation’ or the ‘fair
rental value of the property.’”  McLain, 1996 WL 721954, at *5 (quoting Restatement (Second) of Property § 14.5
cmt. a (1977) (stating that “it is only fair and reasonable to impose upon the
tenant an obligation to pay the landlord . . . for the value of his continued
use and occupation of the leased property”) and 1 American Law of Property § 3.36 (1952)).  Whether a holdover tenant is a trespasser or
a periodic tenant is often dictated by the landlord’s conduct.  McLain,
1996 WL 721954, at *5 n.7.  The
landlord’s either demanding rent or accepting it constitutes an election to
create a tenancy relationship.  Id.

          Here, neither party challenges the
trial court’s ruling that the lease was terminated by the foreclosure of the
property in January 1994.  Furthermore,
the lease itself does not address the status of a tenant holding over after
termination of the lease.  Therefore, we
first examine the post-foreclosure conduct of the parties to determine
Coinmach’s tenancy status in January 1994.

It is undisputed that after Mosley, the original financer who
foreclosed on the property, bought the complex at foreclosure and transferred
it to PPR in January 1994, Coinmach continued in possession and sent rent
checks to Gardenview Apartments. 
Aspenwood does not dispute the summary judgment testimony of both Mosley
and Cragg of PPR that there was no communication between PPR and Coinmach, that
neither Mosley nor PPR knew of Coinmach’s existence or possession of the
laundry room, and that neither Mosley nor PPR ever received or cashed any
checks from Coinmach.  Furthermore,
Aspenwood presented evidence that neither Mosley nor PPR ever contacted
Coinmach to inform it of the foreclosure sale or to ask it to vacate the
property.  Thus, we conclude that no new
lease was formed between PPR and Coinmach.  See ICM Mortgage, 902 S.W.2d at 532‑33
(holding that tenant and foreclosure sale purchaser may independently enter new
landlord-tenant relationship if both parties manifest consent to enter new
lease but continuation in possession, without more, does not establish
agreement to pay rent to lease).

When no new lease is formed and a tenant continues in
possession, as here, the tenant becomes either a tenant at will for no fixed
term, if he holds over with the landlord’s consent, or a tenant at
sufferance.  See Mount Calvary Missionary Baptist Church, 2005 WL 1654752, at *6.  Therefore, based on the post-foreclosure
conduct of PPR and Coinmach, we conclude that Coinmach was a tenant at will for
the three months between PPR’s post-foreclosure purchase of the property and
Aspenwood’s purchase of the apartment.  See ICM Mortgage, 902 S.W.2d at 530
(holding that tenant at will is one who is in lawful possession of premises by
permission of owner or landlord for no fixed term).  As a tenant at will, Coinmach had no sure
estate and became subject to being put out at any time.  See id.

          Aspenwood completed the purchase of
the property in April 1994.  Under the
common law holdover rule, Aspenwood, as the new landlord, could then elect
whether to treat Coinmach as a trespasser or as a tenant holding under the
terms of the original lease.  See Bockelmann, 788 S.W.2d at 571.  The question, therefore, is whether
Aspenwood’s conduct manifested an intention to treat Coinmach as if it were a
tenant holding under the lease.  See ICM Mortgage, 902 S.W.2d at 530–33.  If not, Coinmach necessarily became a tenant
at sufferance without the consent of the landlord and was “merely
an occupant in naked possession of property” and not in privity with the owner.  See id. at 530. 

          Aspenwood’s
conduct, as indicated by the undisputed evidence, supports the conclusion that
it did not consent to Coinmach’s continued possession under the lease.  On April 6, 1994, Aspenwood gave Coinmach
written notice that the lease had been terminated by foreclosure and requested
that Coinmach vacate the laundry rooms. 
Even though Coinmach continued to pay rent, Aspenwood maintains that it
never cashed any checks it received from Coinmach, and Coinmach does not
dispute this fact on appeal.  Aspenwood
filed a forcible entry and detainer suit against Coinmach and, when the writ of
eviction it obtained was overturned by the county court at law, it appealed the
decision, only to have its appeal dismissed for lack of jurisdiction.  Aspenwood continued to assert that Coinmach
was required to vacate the property because the lease had been terminated by
the foreclosure, and it filed the instant trespass to try title suit, seeking a
declaration as to its rights along with other claims asserting Coinmach’s
wrongful behavior.  The evidence that
Aspenwood did not voluntarily consent to Coinmach’s remaining on the premises
is conclusive.  

We conclude that, as a
matter of law, there was no actual or implied contractual landlord-tenant
relationship between Aspenwood and Coinmach. 
See id. at 533 (finding as
matter of law no landlord-tenant relationship after foreclosure, where, despite
tenant’s manifestation of desire to lease property after foreclosure, landlord
through repeated refusals to accept rent revealed only “unwavering disinterest”
in contractual relationship).  We further
conclude that Aspenwood did not consent to Coinmach’s remaining on the premises
as a tenant at will.  We therefore hold
that the trial court did not err in holding that Coinmach was a tenant at
sufferance of Aspenwood as a matter of law and thus could not be liable to
Aspenwood for breach of lease, nor did it err in dismissing Aspenwood’s breach
of lease claims against Coinmach.  

          We overrule the first part of
Aspenwood’s first issue.[6]

C.      The June
11, 2008 Order Dismissing Aspenwood’s Trespass, Trespass to Try Title, Tortious
Interference, and Declaratory Judgment Claims

 

          In the second part of its first issue,
Aspenwood argues that the trial court’s holding that Coinmach was a tenant at
sufferance cannot dispose of Aspenwood’s claim for trespass and trespass to try
title claims.  Consequently, in its
second issue, Aspenwood argues that the trial court erred in dismissing its
trespass and trespass to try title claims. 
In its fourth issue, it argues that the trial court erred in holding its
trespass to try title claims moot after Coinmach vacated the premises, and in
its eighth issue, it argues that the trial court erred in dismissing its
Declaratory Judgment Act claim as invalid. 
Each of these rulings is based on the trial court’s conclusion of law in
its June 11, 2008 order that, as a tenant at sufferance of Aspenwood, “Coinmach
Corporation had a possessory interest and right in the laundry rooms at the
Aspenwood Apartments, from the date of the foreclosure in Jan., 1994, until
Coinmach vacated the property in May, 2000.” 
These rulings are thus based on the trial court’s adjudication of the
respective real property rights of Aspenwood and Coinmach in the title dispute
between Aspenwood and Coinmach.

          The Texas Property Code provides
specific guidelines for adjudicating title interests and possessory rights in real
estate.  Lighthouse Church of Cloverleaf v. Texas Bank, 889 S.W.2d 595, 603
(Tex. App.—Houston [14th Dist.] 1994, writ denied).  Chapter 22 of the Code governs trespass to
try title suits, which are used to determine “title to lands, tenements, or other
real property.”  Tex. Prop. Code Ann. §§ 22.001–22.045 (Vernon 2000); Lighthouse Church, 889 S.W.2d at
603.  Any suit that adjudicates real
property rights is a trespass to try title suit.  See Tex. Prop. Code Ann. § 22.001 (“A
trespass to try title action is the method of determining title to lands,
tenements, or other real property.”); Hill
v. Preston, 34 S.W.2d 780, 787 (Tex. 1931) (“The remedy of trespass to try
title is given in all cases where the right of title or interest and possession
of land may be involved.”); Merit Mgmt.
Partners I, L.P. v. Noelke, 266 S.W.3d 637, 643 (Tex. App.—Austin 2008, no
pet.) (“A suit ‘for the recovery of land’ is a suit that determines
title.”).  District courts have exclusive
jurisdiction to determine title to real property.  See Doggett
v. Nitschke, 498 S.W.2d 339, 339 (Tex. 1973); Merit Mgmt. Partners, 266 S.W.3d at 643.  A leasehold is an interest in real property,
and a dispute over the existence of a leasehold or its extent and parameters
involves a question of title to real property that presents a title question
for the district court.  Merit Mgmt. Partners, 266 S.W.3d at 643.  Rival claims to title or right of possession
may be adjudicated in a trespass to try title action.  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 755 (Tex. 2003).  

Chapter 24 of the Property Code governs forcible entry and
detainer actions, which “provide[] a summary method for determining the right
of a party to the possession of real property.” 
Lighthouse Church, 889 S.W.2d
at 603; see also Tex. Prop. Code Ann. §§ 24.001–24.011
(Vernon 2000 & Supp. 2009) (governing forcible entry and detainer
actions).  To remove a tenant by
sufferance from possession of the premises, the new owner must file a forcible
detainer suit.  Lighthouse Church, 889 S.W.2d at 603. A forcible detainer action is the
procedure used to determine the right to immediate possession of real property
if there is no unlawful entry.  Hong
Kong Dev. Inc. v. Nguyen, 229 S.W.3d 415, 433 (Tex. App.—Houston [1st
Dist.] 2007, no pet.).  In such an
action, “the only issue shall be as to the right to actual possession; and the
merits of the title shall not be adjudicated.” 
Tex. R. Civ. P. 746; Villalon
v. Bank One, 176 S.W.3d 66, 70 (Tex. App.—Houston [1st Dist.] 2004, pet.
denied); Ward v. Malone, 115 S.W.3d 267, 270 (Tex. App.—Corpus Christi
2003, pet. denied).  To prevail in a
forcible detainer action, the plaintiff is not required to prove title, but is
only required to show sufficient evidence of ownership to demonstrate a
superior right to immediate possession.  Villalon,
176 S.W.3d at 70; Rice v. Pinney, 51 S.W.3d 705, 709 (Tex. App.—Dallas
2001, no pet.).  The judgment may be
appealed to the county court.  Tex. R. Civ. P. 749.

          However, if the resolution of a title
dispute is necessarily intertwined with the issue of possession, so that the
right of possession depends upon it, possession may not be adjudicated without
first determining title.  Dormady
v. Dinero Land & Cattle Co., 61 S.W.3d 555, 557 (Tex. App.—San Antonio
2001, pet. dism’d w.o.j.); Rice, 51 S.W.3d at 709; Haith v. Drake,
596 S.W.2d 194, 196 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref’d n.r.e.).  In such a case, neither the justice court nor
the county court, on appeal, has jurisdiction. 
See Rice, 51 S.W.3d at 709; Haith, 596 S.W.2d at 196.  Only the district court has jurisdiction to
determine title.  See Doggett, 498 S.W.2d at 339; Merit
Mgmt. Partners, 266 S.W.3d at 643.  However,
a forcible detainer action is cumulative, not exclusive, of other remedies a
party may have in the courts of this State, including a suit to try title.  See Tex. Prop. Code Ann. § 22.045
(providing that remedies in trespass to try title suit are cumulative); Scott
v. Hewitt, 90 S.W.2d 816, 818–19 (1936); Dormady, 61 S.W.3d
at 558; Rice, 51 S.W.3d at 709.  

          If all matters between the parties
cannot be adjudicated in the justice court in which forcible entry and detainer
proceedings are pending due to the limited subject matter jurisdiction of that
court, either party may maintain an action for relief in a court of competent
jurisdiction.  Hong Kong Dev. Inc.,
229 S.W.3d at 437.  Such an action may
run concurrently with a forcible detainer suit, even if the other action
adjudicates matters that could result in a different determination of
possession.  Id. 
However, where the right to immediate possession in a forcible
detainer action necessarily requires resolution of a title dispute, a justice
court has no jurisdiction to enter a judgment. 
Salaymeh v. Plaza Centro, LLC,
264 S.W.3d 431, 435 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Thus if resolution of a title dispute is a
prerequisite to determination of the right to immediate possession, the justice
court is deprived of jurisdiction over the dispute.  Id.

“To recover in a trespass to try title action, the plaintiff
must recover on the strength of his own title.”  Rogers v. Ricane Enters., Inc.,
884 S.W.2d 763, 768 (Tex. 1994).  Damages
available in a trespass to try title suit include rents and profits, damages
for the use and occupation of the premises, and damages for any special injury
to the property.  See Tex. R. Civ. P.
783(f), 805; see also Musquiz v.
Marroquin, 124 S.W.3d 906, 912 (Tex. App.—Corpus Christi 2004, pet. denied)
(“The plaintiff in a trespass to try title suit may recover rents or damages
incurred from the loss of the use of land.”); City of Austin v. Teague, 570 S.W.2d 389, 394 (Tex. 1978) (holding
that loss of rentals is appropriate measure of damages for temporary loss of
use of land); McLain, 1996 WL 721954,
at *6 (noting that tenants at sufferance have “a duty to pay for the use and
occupation of the land (that is, its fair rental value)”). 

Here, Coinmach contends that, as a tenant at sufferance of Aspenwood, it
had and continued to have a possessory interest in the property it had
previously held under a lease until the eviction process, as set out in the
Texas Property Code, was completed.  See Russell v. Am. Real Estate Corp., 89
S.W.3d 204, 208 (Tex. App.—Corpus Christi 2002, no pet.) (holding that tenants whose lease was
terminated by foreclosure were tenants at sufferance and continued to remain in
possession until eviction process has been completed).  It argues that because Aspenwood’s forcible
entry and detainer action never resulted in completion of the eviction process
as outlined in the Texas Property Code, it retained a possessory interest in
the property.  It cites Russell and Lighthouse Church to support its position.  See id.
at 208–09; Lighthouse Church, 889
S.W.2d at 603.  This argument is
unavailing.

          In both of the cases cited by
Coinmach, the only interest found by the court was a right of possession of a
tenant purportedly holding under the terms of a lease that provided possessory
rights, and the court’s sole holding was that the tenant retained the right to
possession accorded by the lease until the justice court
adjudicated that issue.  As the authorities show, determination of a
right of possession is not a determination of title and, where the resolution
of a title dispute is intertwined with the issue of possession, possession may
not be adjudicated without first determining title.  Rice,
51 S.W.3d at 709; Haith, 596 S.W.2d
at 196.  

In its motion for rehearing, however, Coinmach argues that our
opinion erroneously characterized this case as involving intertwined issues of
title and possession, and it contends that “title has never been at issue in
this case.”  It further argues that “res
judicata and collateral estoppel are at issue” because of Aspenwood’s 1996
attempt to remove Coinmach from the property through a forcible entry and
detainer action.  And it argues that our
opinion creates “a title requirement in [an] eviction case” that “divests
justice of peace and county courts of jurisdiction even in simple possession
matters” that will lead to district courts being burdened with eviction
dockets.  We have granted rehearing to dispel
any confusion about our opinion.

Aspenwood has asserted throughout the entirety of its
dealings with Coinmach that Coinmach’s right under the original lease
terminated with the foreclosure, and, therefore, Coinmach had no right of
possession or any interest in the property. 
Thus, the title questions of whether a leasehold existed and of its
extent and parameters have been central issues from the beginning of this
case.  See Merit Mgmt. Partners, 266 S.W.3d at 643 (holding that leasehold
is interest in real property and dispute of existence of leasehold or its
extent and parameters involves question of title to real property that presents
title question for district court).  Coinmach’s
right of possession, if any such right existed, arose solely from the existence
of some kind of leasehold.  Thus,
determination of Coinmach’s right of possession necessarily required the
resolution of the title questions surrounding the validity of the lease.

This case is not a simple eviction case.  It is a case in which the question of the
right of possession is intertwined with a title issue—namely, the existence and extent of a
leasehold interest. 
Title cannot be
adjudicated by the justice court or county court at law, but must be
determined, as here, in a trespass to try title suit in the district court.  See
Merit Mgmt. Partners, 266 S.W.3d at 643; Hong Kong Dev. Inc., 229 S.W.3d at 437.  Nor is a tenant’s mere right of possession
until the completion of an eviction process a claim to superior title.  Mount
Calvary Missionary Baptist Church, 2005 WL 1654752, at *7.  Rather, “[A] judgment of possession in a
forcible detainer action is a determination only of the right to immediate
possession and does not determine the ultimate rights of the parties to any
other issue in controversy relating to the realty in question.”  See Hong Kong Dev. Inc., 229 S.W.3d
at 437 (quoting Lopez v. Sulak, 76
S.W.3d 597, 605 (Tex. App.—Corpus Christi 2002, no pet.)).  The justice of the peace did not have
jurisdiction to determine Coinmach’s ultimate right of possession under the
lease.  See Merit Mgmt. Partners, 266 S.W.3d at 644.  Thus, the proceedings in the justice court
and the county court at law that allowed Coinmach to remain in possession of
the laundry rooms were not a determination of Coinmach’s ultimate rights, if
any, under the lease—they merely addressed the issue of immediate possession while
Aspenwood sought resolution of the issues surrounding the status of the
original lease.

The instant litigation was brought by Aspenwood specifically
to try title, as well as to recover damages due to Coinmach’s wrongful
possession of the premises as a trespasser, and the district court determined
that Coinmach did not have a valid lease and was therefore a tenant at
sufferance.  Contrary to Coinmach’s
arguments, its status as a tenant at sufferance did not confer upon it any
right of possession.  See Mount Calvary Missionary Baptist Church,
2005 WL 1654752, at *7 (“A tenant at sufferance is merely an occupant in naked
possession of property after his or her right to possession has ceased.”); see also ICM Mortgage, 902 S.W.2d at 530
(holding that tenant at sufferance “is one who wrongfully continues in
possession of property after his right to possession has ceased”); McLain, 1996 WL 721954, at *5 (holding
that landlord may treat tenant at sufferance either as trespasser or as
periodic tenant retroactively to beginning of relationship).  Furthermore, the judgment of the justice court and county
court at law could not be res judicata or serve as the basis for estoppel in a title
proceeding in the district court.  Tex. Civ. Prac. & Rem. Code Ann.
§ 31.004(a) (Vernon 2008); see also
Lopez, 76 S.W.3d at 606 (“A judgment in a justice court granting a landlord
possession in a forcible detainer action is not res judicata of a tenant’s
trespass to try title suit in district court.”); McCloud v. Knapp, 507 S.W.2d 644, 647 (Tex. Civ. App.—Dallas 1974,
no writ) (holding that judgments of justice court in forcible detainer action
were not res judicata of suit for judgment declaring right to enforce lifetime
tenancy or, alternatively, for damages in lieu of possession).

The trial court, in the instant suit, correctly determined
that Coinmach was a tenant at sufferance of Aspenwood, but it also concluded in
its June 11, 2008 order that because Coinmach was a tenant at sufferance, it
had “had a possessory interest and right in the laundry rooms at the Aspenwood
Apartments, from the date of the foreclosure in Jan., 1994, until Coinmach
vacated the property in May, 2000.”  This
conclusion of law was erroneous.  See Bockelmann, 788 S.W.2d at 571; Currasco, 224 S.W.3d at 368; McLain, 1996 WL 721954, at *5; see also Restatement (Second) of Property § 14.5 cmt. a (1977).  A tenant who remains in possession of
premises after termination of the lease occupies wrongfully as a tenant at
sufferance and is impliedly liable to the landlord for the use and occupation
or the fair rental value of the property. 
See Bockelmann, 788 S.W.2d at
571; Carrasco, 224 S.W.3d at 368; McLain, 1996 WL 721954, at *5; see also Restatement (Second) of Property § 14.5 cmt. a (1977).

Because of its erroneous conclusion that Aspenwood, as a
tenant at sufferance, had a possessory interest in the laundry rooms, the trial
court erred in making a number of holdings in the same June 11, 2008 order
predicated upon that conclusion.  Specifically,
it erroneously held that “the legal effect of the Court’s May 29, 2007 ruling
is to preclude [Aspenwood’s] remaining causes of action as a matter of law”;
that “Aspenwood shall take nothing by way of its common law trespass and
trespass-to-try-title claims”; and that Aspenwood’s “trespass to try title was
mooted in May, 2000 because Coinmach left the property, never to return.”  It also erred in holding, on the same basis, “that
Aspenwood is not entitled to any relief on its Declaratory Judgment Act
claim.”  See Tex. Prop. Code Ann.
§ 22.045 (providing remedies in trespass to try title suit are cumulative).

          We conclude that Coinmach’s status as
a tenant at sufferance does not prevent Aspenwood from trying its claims for
trespass, trespass to try title, and the resulting damages or from trying its
claims for declaratory judgment.

          We sustain the second part of Aspenwood’s
first issue, as well as its second, fourth, and eighth issues.

D.      Tortious
Interference Claims

In its third and fifth issues, Aspenwood argues that the
trial court erred in dismissing its tortious interference claim and in holding
that that claim was barred by limitations on the basis of Coinmach’s status as
tenant at sufferance.  Coinmach argues that,
as a tenant at sufferance, it had a possessory interest, and, therefore, it
“cannot have tortiously interfered with [Aspenwood’s] prospective contractual
relations because it was exercising its own lawful rights of possession and
that there is no independent tort[,] which is a required predicate to such a
claim.”  However, for the same reasons we
have already discussed, the trial court erroneously concluded that Coinmach had
a “possessory interest”, and Aspenwood presented evidence raising a fact issue on
its claim that Coinmach’s conduct tortuously interfered with Aspenwood’s
prospective contractual relations.  Thus,
Coinmach was not entitled to judgment as a matter of law on this ground.

The trial court also held that Aspenwood’s “tortious
interference with prospective contractual relations is barred by the statute of
limitations.”  Tortious interference
claims are subject to a two-year statute of limitations.  See Tex. Civ. Prac. & Rem. Code Ann. §
16.003(a) (Vernon Supp. 2010); see also
First Nat’l Bank v. Levine, 721 S.W.2d 287, 288–89 (Tex. 1986) (holding
that tortious interference falls within the definition of trespass under
section 16.003(a)).  However, Aspenwood
argues that Coinmach’s continued occupation of the laundry rooms was a trespass
that constituted a continuous tort, thus tolling the statute of limitations
until the tortious conduct ceased. 
Although the Texas Supreme Court has “neither endorsed nor addressed”
the continuing tort doctrine, see
Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 816 n.8 (Tex. 2005), several
courts of appeals have held that a cause of action for a continuing tort does
not accrue until the defendant’s tortious conduct ceases.  See,
e.g., Krohn v. Marcus Cable Assocs.,
L.P., 201 S.W.3d 876, 880 (Tex. App.—Waco 2006, pet. denied); Rogers v. Ardella Veigel Inter Vivos Trust,
162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied); W.W. Laubach Trust v. Georgetown Corp., 80 S.W.3d 149, 159 (Tex.
App.—Austin 2002, pet. denied).  “In
determining whether there is a continuing tort, ‘care must be taken to
distinguish between 1) repeated injury proximately caused by repetitive
wrongful or tortious acts and 2) continuing injury arising from one wrongful
act.  While the former evinces a
continuing tort, the latter does not.’”  Krohn, 201 S.W.3d at 880 (quoting Rogers, 162 S.W.3d at 290).  

Here, Aspenwood alleges that Coinmach’s continued occupation
of the laundry rooms after the termination of its lease and Aspenwood’s demand
that it vacate the premises interfered with Aspenwood’s ability to lease the
space to another laundry service.  Thus,
it has alleged repeated injury caused by allegedly repetitive wrongful or
tortious acts that continued until Coinmach vacated the premises in 2000—two years after Aspenwood filed this
case in 1998.  We conclude that this is
the type of conduct that tolls the statute of limitations under the continuing
tort doctrine. 

In its motion for rehearing, Coinmach cites Electronic Bankcard Systems, Inc. v. Retriever
Industries, Inc., in which this Court declined to apply the continuing tort
doctrine to a tortious interference claim. 
See No. 01-01-00240-CV, 2003 WL 204717, at *7 (Tex. App.—Houston [1st
Dist.] Jan. 30, 2003, no pet.) (mem. op.). 
However, Electronic Bankcard
Systems is factually distinguishable from the present case.  There, the complained-of wrongful conduct “occurred
when appellants’ sales representatives were persuaded to discontinue their
relations with appellants,” which allegedly occurred in 1994 and early
1995.  In concluding that this action did
not toll the statute of limitations for a suit filed in 1999, this Court noted
the distinction between wrongful conduct that is ongoing and wrongful conduct
that has ceased but continues to create ongoing damages.  Id.  We concluded that “[t]he continuing loss
of residual fees that may have resulted from that alleged wrongful conduct does
not toll the statute of limitations” and that the appellants in that case did
“not complain[] of an ongoing wrong that justifies application of the
continuing tort doctrine.”  Id. 
Here, Aspenwood has complained of a continuing wrong—Coinmach’s presence on the property
after its lease was terminated in 1994 until 2000. 

Thus, we conclude that the trial court erred in dismissing
Aspenwood’s claim for tortious interference.

We sustain Aspenwood’s third and fifth issues.

E.      DTPA
Claims

          In its sixth issue, Aspenwood argues
that the trial court erred in concluding in its separate June 11, 2008 order on
Coinmach’s no evidence motion for summary judgment that Aspenwood was not a
consumer under the DTPA and in dismissing its DTPA claims against Coinmach.

          A DTPA consumer is an individual or
entity “who seeks or acquires by purchase or lease, any goods or services. . .
.”  Tex.
Bus. & Com. Code Ann. § 17.45(4) (Vernon Supp. 2009).  The goods or services sought must be the
basis for the suit.  Favor v. Hochheim Prairie Farm Mut. Ins. Ass’n, 939 S.W.2d 180, 182
(Tex. App.—San Antonio 1996, writ denied). 


Here, Aspenwood did not seek or receive a good or service
from Coinmach.  The only thing Aspenwood
could have potentially sought or received from Coinmach was monthly rent
payments on the leased laundry rooms or damages for trespass.  This is not sufficient to confer consumer
status on Aspenwood under the DTPA.  See id. (holding that plaintiff who
sought goods or services for her clients was not DTPA consumer). Aspenwood has
provided no evidence to support its claim that it was a consumer of services
provided by Coinmach.  We conclude that
the trial court did not err in granting Coinmach summary judgment on
Aspenwood’s DTPA claims based on its ruling that Aspenwood was not a consumer
under the DTPA.

We overrule Aspenwood’s sixth issue.

E.      Prevailing
Party Legal Fees

          In its seventh issue, Aspenwood argues
that the trial court erred in determining that it was not a prevailing party on
Coinmach’s counterclaims.  Because of our
prior rulings, this issue is moot.

CONCLUSION

          We affirm the judgment of the trial
court dismissing Aspenwood’s breach of lease and DTPA claims.  We
reverse the trial court’s July 11, 2008 order clarifying its previous
“tenant-at-sufferance” order entered on May 29, 2007, and we remand the case for further proceedings on Aspenwood’s claims of
trespass, trespass to try title, tortious interference, and its declaratory
judgment action consistent with this opinion.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

 











[1]           See
Tex. Bus. & Com. Code Ann.
§§ 17.01–17.926 (Vernon 2002 & Supp. 2009).

 





[2]              See Tex. Bus. & Com. Code Ann. § 27.01 (Vernon 2009).





[3]              This ruling does not appear
in the appellate record.  Both parties’
briefs acknowledge that such a ruling was made by the trial court.

 





[4]           Again,
the motion for new trial and the trial court’s order granting the motion do not
appear in the appellate record.  Both
parties acknowledge that the motion and ruling were made, and the docket sheet reflects
that the trial court granted a motion for new trial on September 25, 2000 and
reinstated the case.





[5]
              The
company “Pech Road Investments” is not clearly identified in the record.  Based on some passing comments in deposition
testimony of Curtis Mosley and Jack Yetiv, Pech Road Investments appears to
have been the owner of Gardenview Apartments before it was sold in foreclosure
to Curtis Mosely and PPR.





[6]           Under
our holdings, Aspenwood’s arguments that Coinmach’s previous arguments to the
contrary estopped it from arguing that the lease is not binding on the parties
are moot.  We note, however, that
Coinmach did not change its position regarding the validity of the lease until
it was required to acknowledge the ruling of the trial court that the lease was
terminated by foreclosure, and therefore the doctrine of quasi-estoppel does
not apply.  See Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc., 938 S.W.2d
102, 111 (Tex. App.—Houston [14th Dist.] 1996, no writ) (“Under the principle
of quasi-estoppel, a party is precluded from asserting, to another’s
disadvantage, a right inconsistent with a position it has previously taken”;
doctrine applies “where it would be unconscionable to allow a party to maintain
a position inconsistent with one in which it acquiesced, or of which it
accepted a benefit”).